Robert M. Gilchrest, SBN 134254
rgilchrest@silverfirm.com
Amy S. Russell, SBN 284131
arussell@silverfirm.com
SILVERMAN SHIN BYRNE & GILCHREST LLP
500 South Grand Avenue, Suite 1900
Los Angeles, CA 90071
Telephone: 213.683.5350
Facsimile: 213.627.7795

Attorneys for Plaintiff
Freyr Holdings, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREYR HOLDINGS, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> LEGACY LIFE ADVISORS, LLC, a Florida limited liability company; DEREK A SIEWERT, an individual; WILLIAM HUTCHISON, an individual; and DOES 1 through 15, inclusive, <br><br> Defendants. | Case No.: 2:10-cv-09446-GAF-E <br><br> The Hon. Gary A. Feess, Ctrm. 740 <br><br> **NOTICE OF MOTION AND MOTION OF SILVERMAN SHIN BYRNE & GILCHREST LLP TO BE RELIEVED AS COUNSEL OF RECORD OF PLAINTIFF FREYR HOLDINGS, LLC; MEMORANUDM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT M. GILCHREST** <br><br> **[Filed Concurrently With (Proposed) Order]** <br><br> HEARING <br> Date: January 27, 2014 <br> Time: 9:30 a.m. <br> CTRM: 740/ROYBAL FEDERAL BUILDING <br><br> TRIAL <br> Date: Trial Completed <br> CTRM: 740/ROYBAL FEDERAL BUILDING <br><br> Action Filed: April 27, 2010 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 27, 2014, at 9:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 740 of the above entitled United States District Court, located at 255 East Temple Street, Los Angeles, California 90012, Silverman Shin Byrne & Gilchrest LLP ("SSB&G") will and hereby does move this Court for an order pursuant to Local Rule 83-2.3.2 and California Rules of Professional Conduct 3-700(C)(1)(d) and (f) to be relieved as counsel of record for plaintiff Freyr Holdings, LLC ("Freyr").

This Motion is made on the ground that Freyr has breached its payment obligation under the fee agreement with SSB&G, and, as a result of a baseless and inflammatory accusation of excess billing by Freyr, it has become unreasonable for SSB&G and Freyr to continue to work together as attorney and client in this matter.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities and Declaration of Robert M. Gilchrest and exhibits thereto, all pleadings and papers on file with this Court, and such other arguments that may be presented to the Court at or before the hearing on this Motion.

Dated: December 24, 2013                     Respectfully submitted,

                                             SILVERMAN SHIN BYRNE & GILCHREST LLP

                                             By: /s/ Robert M. Gilchrest
                                                 Robert M. Gilchrest
                                                 Amy S. Russell
                                                 Attorneys for Plaintiff
                                                 FREYR HOLDINGS, LLC

MOTION TO BE RELIEVED AS COUNSEL OF RECORD FOR PLAINTIFF

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. INTRODUCTION

The need and timing of this motion of Silverman Shin Byrne & Gilchrest LLP ("SSB&G") is regrettable. SSB&G have represented plaintiff Freyr Holdings, LLC ("Freyr") in three lawsuits, including the case at bar. By any measure, SSB&G's prior representations of Freyr have been a success. On the first day of trial in a Superior Court matter, SSB&G obtained payment of $100,000 for Freyr and ultimately a judgment in the amount of $350,000 and right of possession of $1.2 million in shares of an off-shore entity. SSB&G obtained this result while incurring attorney's fees and costs of under $100,000. In September 2013, SSB&G obtained a judgment in favor of Freyr for over $84,000. SSB&G obtained this judgment while incurring attorney's fees and costs of under $20,000.

Despite achieving these results together, SSB&G is forced to bring this motion because Freyr refuses to pay an invoice of under $52,000 reflecting past due attorney's fees and costs as well as all attorney's fees and costs incurred in the days before trial, during trial, and in preparation of the closing brief submitted to the Court following closing arguments in late October 2013. After issuing the invoice on November 8, 2013, SSB&G requested that Freyr make timely payment on the invoice. On December 17, 2013, Freyr promised to make a $20,000 partial payment by December 19, 2013, and to call SSB&G to discuss issues with prior billing. Freyr did not make the payment and did not call SSB&G to discuss its concerns of prior billing by December 19, 2013, as promised. Instead, **on December 19, 2013**, Freyr accused SSB&G in writing of billing it for $37,000 of unnecessary work performed between **November 2012 and March 2013**. Freyr's retainer agreement with the firm requires that it raise questions concerning bills within 30 days of receipt. Not only is the accusation significantly late, but the accusation is false and: (a) **ignores entirely** the fact that, in July 2007, this Court issued a scheduling order requiring the parties to meet and confer and file with the Court by December 21, 2013, Local Rule 16-4

through 16-7 pretrial documents; (b) **ignores entirely** that, on December 4, 2012, defendants Legacy Life Advisors, LLC, Derek Siewert, and William Hutchison (collectively, "defendants") filed a motion to modify the Court's scheduling order, a motion which had to be opposed; (c) **ignores entirely** that, in denying defendant's motion to modify the scheduling order on January 3, 2013, this Court vacated the February 2013 trial date and ordered the parties into settlement mediation; and (d) **ignores entirely** the investigation done into, among other things, possible claims against a third party in connection with the settlement mediation in February 2013.

On December 20, 2013, SSB&G provided Freyr with the Court's July 17, 2013, Scheduling Order and January 3, 2013, Order denying defendants' motion to modify the scheduling order and ordering the parties into mediation. Thereafter, SSB&G attempted to speak by phone with Freyr to expeditiously resolve the fee dispute. However, since receiving these items, Freyr's representatives have refused to take calls from SSB&G and have accused SSB&G of "harassment [in] what appears to be attempts to set up frivolous claims." Worse yet, Freyr now says that it "will discuss payments, **if any**, after we've had a chance to review with you the charges for this matter."

SSB&G has bent over backwards to try to resolve this dispute with Freyr expeditiously. In response, Freyr has broken promise after promise to make a partial payment and now refuses to take SSB&G's calls. An attorney is not required to work for a client who is unwilling to pay its bills, will not take calls from the attorney, and accuses the lawyer of billing fraud.

Accordingly (and regrettably), SSB&G brings this motion to be relieved as counsel of record for Freyr.

B.   **THE GENSIS OF THE RELATIONSHIP**

Attorney Robert Gilchrest represented Freyr in various legal matters before joining the predecessor of SSB&G in April 2011. [Declaration of Robert M. Gilchrest ("Gilchrest Decl."), ¶ 2, Ex. 1.] The terms of the representation of Freyr have

remained the same from day-one of the representation. [Id.] Gilchrest has charged Freyr his standard rate of $400 per hour, a bargain considering that Gilchrest has over 25 years of litigation experience and the rate is a mere $70 per hour more than his hourly rate at the time he left the international law firm of Jones, Day, Reavis & Pogue in March 2000. [Id.] Freyr has never complained about Gilchrest's hourly rate. [Id.] SSB&G has charged Freyr between $250 and $300 per hour for work done by non-partners. [Id.] Freyr has never complained about the hourly rates of non-partner lawyers. [Id.]

Freyr's partners, Richard Marshall, William ("Bill") Lui, and Erik Nord, are no strangers to working with lawyers who charge substantially more than Gilchrest's hourly rate. Marshall and Lui regularly use lawyers from top tier firms, whose partners have hourly rates that exceed $650 per hour. [Gilchrest Decl., ¶ 3.] Nord practiced at O'Melveny & Myers LLP until joining Freyr as a partner in or about 2009. [Id.]

### C. PRIOR SUCCESSFUL REPRESENTATIONS

Gilchrest and SSB&G have provided legal services for Freyr on a number of matters, including the following litigation matters.

#### 1. The Benistar Matter

In early 2010, Freyr retained Gilchrest to represent it in a collection action (the "Benistar Matter") against defendants residing in Connecticut. [Gilchrest Decl., ¶ 4.] Like the current case, the Benistar Matter was complicated by the fact that there was no signed agreement. [Id.] Rather, the case involved claims that Freyr would have to prove through a combination of oral representations, emails, and conduct. [Id.]

The Benistar Matter settled on the first day of trial in October 2011. [Gilchrest Decl., ¶ 5.] The settlement resulted in a $100,000 payment to Freyr and an agreement to pay an additional $350,000 over time. [Id.] The defendants agreed to entry of a stipulated judgment in the event that they defaulted on the payments of the $350,000. [Id.] The defendants also pledged shares in an off-shore entity with a value of $1.2 million as security for payment of the $350,000. [Id.] Defendants defaulted on the

1 payments, enabling Freyr to have the stipulated judgment entered and to seek
2 possession of the shares in the off-shore entity. [Id., Ex. 2.] SSB&G secured this
3 result for under $85,000 in attorney's fees and costs. [Id.]
4     Over lunch, Freyr requested that SSB&G discount its final invoice on the matter
5 by $9,000. [Gilchrest Decl., ¶ 6.] Gilchrest reluctantly agreed to the discount but
6 expressed his displeasure given the results of the case and reasonableness of the fees
7 and costs incurred to achieve that result. [Id.] Thereafter, Freyr used its rights to seek
8 possession of the shares to leverage a $10 million payment from the off-shore entity in
9 the summer of 2012. [Id.]
10     2.   The Newfield Matter
11     Newfield was another collection matter (the "Newfield Matter"). [Gilchrest
12 Decl., ¶ 7.] SSB&G initiated a collection action in the Newfield Matter in or about
13 June 2012. [Id.] The defendants in Newfield reside in or around the New York
14 metropolitan area. [Id.]
15     The defendants in the Newfield Matter dodged service of the summons and
16 complaint, forcing SSB&G to go through the rigors of arranging to have them served
17 by publication. [Gilchrest Decl., ¶ 7.] The defendants failed to timely respond to the
18 complaint. [Id.] Out of due process concerns, the Judge of the Los Angeles Superior
19 Court overseeing the case required Freyr to submit fairly detailed information
20 concerning efforts to serve defendants. [Id.] In the end, the Superior Court Judge
21 entered judgment by default against defendants in excess of $80,000. [Id., Ex. 3.]
22 SSB&G invoiced Freyr for under $17,500 (including the cost of service of process by
23 publication in New York City). [Id.]
24     D.   **THE INSTANT MATTER**
25     Gilchrest has represented Freyr in the instant matter since its inception.
26 [Gilchrest Decl., ¶ 8.] From day one, the instant matter has been hotly-contested. [Id.]
27 Defendants currently are on their third counsel. [Id.] Their first lawyers moved to
28 quash service of the summons and complaint for lack of personal jurisdiction. [Id.]

1  That motion was denied. [Id.] They also demurred to the complaint. [Id.] That
2  motion, too, was denied. [Id.] Finally (before being replaced), defendants' first
3  lawyers had the case removed from Superior Court to this Court. [Id.]
4        Defendants' second lawyers engaged in significant written discovery with
5  SSB&G. [Gilchrest Decl., ¶ 9.] In addition, the parties filed cross-motions for
6  summary judgment. [Id.] In July 2012, this Court issued an extensive written ruling
7  largely denying the cross-motions but dismissing Freyr's conversion claim. [Id.] In
8  addition, the Court issued a Scheduling Order which set this matter for trial in February
9  2013 and ordered the parties to meet and confer to prepare and, by December 21, 2012,
10 file pretrial filings required by Local Rule 16-4 through 16-7. [Id.]
11       In or about November 2012 (before this matter was set to go to trial in
12 February 2013), Freyr and SSB&G discussed an estimate of fees and costs through
13 trial. [Gilchrest Decl., ¶ 10.] SSB&G reaffirmed its estimate given to Freyr in June
14 2011 out of concerns that defendants' third (current) lawyers might take the position
15 that the case was to be tried to a jury. [Id., Ex. 4.] In addition, on December 4, 2012,
16 defendants' new lawyers filed a motion to modify the scheduling order in part to
17 withdraw factual admissions that had been in place for well over a year in the litigation.
18 [Id.] SSB&G advised Freyr that it would need to incur fees and costs to oppose the
19 motion. [Id.]
20       In December 2012, Marshall and Lui requested that SSB&G agree to accept an
21 advance payment towards fees and costs in this matter. [Gilchrest Decl., ¶ 11.]
22 Marshall and Lui explained that they wished to reduce their taxable income on the
23 money received from the off-shore entity in the summer and fall of 2012. [Id.]
24 SSB&G agreed. [Id.] At the time, Gilchrest advised Marshall that Freyr already had
25 incurred roughly $35,000 in fees and costs in preparing: (a) the pretrial documents
26 required by the July 17, 2012, Scheduling Order; and (b) the opposition to defendants'
27 motion to modify the scheduling order. [Id.] At the time, Freyr also had a receivable
28 with the firm from work done on other matters, including the Newfield Matter. [Id.]

Marshall and Lui deposited $80,000 with the firm in late December 2012. [Id.]

On January 4, 2013, the Court issued its order denying defendants' motion to modify the scheduling order. [Gilchrest Decl., ¶ 12.] In addition, the Court vacated the trial date and ordered the parties into mediation before the Court's ADR service. [Id.] From January through June 2013, SSB&G used funds from Freyr's deposit to cover fees and costs incurred in this matter, the Newfield matter, and a potential lawsuit against a third party arising from conduct uncovered during settlement discussions with the Court's ADR mediator in this matter. [Id.] Each month, SSB&G sent invoices to Freyr evidencing the attorney's fees and costs incurred and application of deposited funds towards those amounts. [Id.] Never once did Freyr complain about the legal work or fees and costs evidenced by the legal bills. [Id.]

By July 2013, the funds deposited by Marshall and Lui had been exhausted. [Gilchrest Decl., ¶ 13.] Freyr received monthly invoices for July, August, and September, but failed to pay those invoices. [Id.] Shortly before the October trial in this matter, SSB&G requested that Freyr get current, and, without complaint, Freyr did. [Id.]

On November 8, 2013 (following trial), SSB&G emailed a copy of its November 2013 invoice to Freyr for fees and expenses incurred in connection with the trial in this matter. [Gilchrest Decl., ¶ 14, Ex. 5.] The invoice totaled $51,880.93, reflecting attorney's fees incurred in connection with trial, costs of just over $2,100, and a small past-due amount of just over $2,500. [Id.] SSB&G offered Freyr a 20% discount on the invoice if Freyr paid it by November 12, 2013. [Id.]

Freyr did not pay the invoice within a week of receipt and, to date, has not paid the invoice. [Gilchrest Decl., ¶ 15.] Freyr did not raise any concerns with any of the fees and costs billed in the invoice within 30 days, as required by the retainer agreement. [Id.]

On December 5, 2013, SSB&G inquired about payment of the November 2013 invoice, explaining that the firm traditionally makes a push to get in year- end

receivables as quickly as possible in order to determine holiday bonuses. [Gilchrest Decl., ¶ 16, Ex. 6.] On December 17, 2013, Marshall indicated that Freyr would be making a $20,000 payment by December 19, 2013, and wished to speak with Gilchrest about the November 2013 invoice on December 19, 2013. [Id., Ex. 7.]

Gilchrest advised Freyr that SSB&G had not received payment as of 9:30am on December 19, 2013. [Gilchrest Decl., ¶ 17, Ex. 8.] Marshall left Gilchrest a message indicating that a $20,000 payment would be made later that day. [Id., Ex. 9.]

Freyr did not make a partial payment by December 19, 2013, as promised, and did not call Gilchrest to discuss concerns about the SSB&G invoices. [Gilchrest Decl., ¶ 18.] Accordingly, Gilchrest sent Freyr an email expressing irritation over the string of broken promises. [Id., Ex. 10 (p. 7).] Marshall advised Gilchrest that Lui, Nord, and he were working on a response. [Id., Ex. 10 (p. 6).] Gilchrest received the response in the early afternoon of December 20, 2013. [Id., Ex. 10 (pp. 4-5)] The response is nothing short of stunning.

On December 20, 2013, Freyr falsely accused SSB&G of engaging in billing fraud through: (a) doing unnecessary work from November 2012 throughout early 2013; and (b) overbilling the week before and during the trial of this matter. [Gilchrest Decl., ¶ 19, Ex. 10 (pp. 4-5).] The accusation of past billing fraud: (a) **ignores entirely** the fact that, in July 2007, this Court issued an order requiring the parties to meet and confer and file with the Court by December 21, 2013, Local Rule 16-4 through 16-7 pretrial documents; (b) **ignores entirely** that, on December 4, 2012, defendants filed a motion to modify the Court's scheduling order, a motion which had to be opposed; (c) **ignores entirely** that, in denying defendant's motion to modify the scheduling order, this Court vacated the February 2013 trial date and ordered the parties into settlement mediation; and (d) **ignores entirely** the investigation done into, among other things, possible claims against a third party in connection with the settlement in February 2013. [Id.] The accusation of overbilling in connection with the trial of this matter was singularly shocking to SSB&G given the fact that much of the time invoiced arose

from meetings and correspondence Gilchrest had with Marshall and Lui before, during, and after trial. [Id.]

On December 20, 2013, SSB&G sent Freyr copies of the Court's July 2007 Scheduling Order and Order denying defendants' motion to modify the scheduling order. [Gilchrest Decl., ¶ 20, Ex. 10 (p. 2).] Gilchrest then phoned and sent emails to Freyr in an attempt to work through the dispute. [Id.] Gilchrest advised Freyr that SSB&G would file a motion to be relieved as counsel on December 23, 2013, if Freyr refused to discuss the dispute promptly. [Id.] Freyr refused to take Gilchrest's calls and, in breach of its prior promises, indicated that it would make no payment (partial or otherwise) until it had a chance to determine what, if any, payments would be made. [Id.] This motion followed.

### E.  ARGUMENT

Local Rule 83-2.3.2 provides that an attorney may not withdraw as counsel except with leave of court. Federal courts generally look to applicable state rules of professional conduct to determine whether adequate grounds exist to excuse counsel from further representation of a party. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* (The Rutter Group) § 12:193, p. 12-66.4.

Under California Rules of Professional Conduct ("CRPC"), an attorney is permitted to withdraw if the client breaches an agreement or obligation relating to the attorney's expenses or fees. CRPC 3-700(C)(1)(f); *see also Statute of Liberty-Ellis Island Foundation, Inc. v. International United Industries, Inc.*, 110 F.R.D. 395, 397 (S.D. N.Y. 1986). California also recognizes the right to withdraw where there has been a breakdown in the attorney client relationship such that it would unreasonably difficult for the attorney and client to continue to work together. CRPC 3-700(C)(1)(d); *see also Estate of Falco v. Decker*, 188 Cal.App.3d 1004, 1014 (1987).

Here, as demonstrated in Sections B and D above, Freyr has breached its payment obligation under the fee agreement with SSB&G. [Gilchrest Decl., ¶¶ 2, 14-20, Exs. 1, 10.] In addition, Freyr's accusation of fraudulent billing and refusal to take

phone calls from SSB&G to resolve the fee dispute expeditiously make it unreasonable for SSB&G and Freyr to continue to work together as attorney and client in this matter. [Id., Ex. 10.]

Accordingly, SSB&G respectfully requests that this Motion to be relieved as Freyr's counsel of record in this matter be granted.

### F. CONCLUSION

For the reasons set forth above, SSB&G respectfully submits that this Motion to be relieved as counsel of record for Freyr in this matter should be granted.

Dated: December 24, 2013

Respectfully submitted,

SILVERMAN SHIN BYRNE & GILCHREST LLP

By: /s/ Robert M. Gilchrest
Robert M. Gilchrest
Amy S. Russell
Attorneys for Plaintiff
FREYR HOLDINGS, LLC

## DECLARATION OF ROBERT M. GILCHREST

I, ROBERT M. GILCHREST, declare as follows:

1. I am a member of the bar of the State of California and of this Court. I am a partner at the law firm of Silverman Shin Byrne & Gilchrest LLP ("SSB&G"), counsel of record herein for plaintiffs Freyr Holdings, LLC ("Freyr"). I submit this declaration in support of SSB&G's motion to be relieved as counsel of record for Freyr. I have personal knowledge of the matters set forth in this declaration and if called upon I could and would testify competently and truthfully thereto.

2. I represented Freyr in various legal matters before joining the predecessor of SSB&G in April 2011. The terms of the representation of Freyr have remained the same from day-one of the representation. I have charged Freyr my standard rate of $400 per hour, a bargain considering that I have over 25 years of litigation experience and the rate is a mere $70 per hour more than my hourly rate at the time I left the international law firm of Jones, Day, Reavis & Pogue in March 2000. Freyr has never complained about my hourly rate. SSB&G has charged Freyr between $250 and $300 per hour for work done by non-partners. Freyr has never complained about the hourly rates of non-partner lawyers. Attached hereto as Exhibit 1 is a true and correct copy of excerpts of SSB&G's retainer agreement with Freyr.[1]

3. During the course of my representation of Freyr, Richard Marshall and William Lui advised me that they regularly use top tier firms whose partners have hourly rates that exceeds $650 per hour. Additionally, Eric Nord practiced at O'Melveny & Myers LLP until joining Freyr as a partner in or about 2009.

4. In early 2010, Freyr retained me to represent it in a collection action (the "Benistar Matter") against defendants residing in Connecticut. Like the current case, the Benistar Matter was complicated by the fact that there was no signed agreement. Rather, the case involved claims that Freyr would have to prove through a combination

---

[1] In order to minimize the disclosure of privileged information, I have attached only excerpts of the retainer agreement and have not attached the invoices in question as exhibits to this declaration.

of oral representations, emails and conduct.

5. The Benistar Matter settled on the first day of trial in October 2011. The settlement resulted in a $100,000 payment to Freyr and an agreement to pay an additional $350,000 over time. The defendants agreed to entry of a stipulated judgment in the event that they defaulted on the payments of the $350,000. The defendants also pledged shares in an off-shore entity with a value of $1.2 million as security for payment of the $350,000. The defendants defaulted on the payments, enabling Freyr to have the stipulated judgment entered and to seek possession of the shares in the off-shore entity. SSB&G secured this result for under $85,000 in attorney's fees and costs. Attached hereto as Exhibit 2 is a true and correct copy of the Judgment Pursuant to Settlement entered in the Benistar Matter.

6. Over lunch, Freyr requested that SSB&G discount its final invoice on the Benistar Matter by $9,000. I reluctantly agreed to the discount but expressed my displeasure given the results of the case and the reasonableness of the fees and costs incurred to achieve that result. Thereafter, Freyr used its rights to seek possession of the shares in the off-shore entity to the leverage a $10 million dollar payment from the off-shore entity in the summer of 2012.

7. Newfield was another collection matter (the "Newfield Matter") handled for Freyr by SSB&G. SSB&G initiated a collection action in the Newfield Matter in or about June 2012. The defendants in Newfield reside in or around the New York metropolitan area. The defendants in the Newfield Matter dodged service of the summons and complaint, forcing SSB&G to go through the rigors of arranging to have them served by publication. The defendants failed to timely respond to the complaint. Out of due process concerns, the Judge of the Los Angeles Superior Court overseeing the case required Freyr to submit fairly detailed information concerning efforts to serve defendants. In the end, the Superior Court Judge entered judgment by default against defendants in excess of $80,000. Attached hereto as Exhibit 3 is a true and correct copy of the Judgment entered in the Newfield Matter. SSB&G invoiced Freyr for

1  under $17,500 (including the cost of service of process by publication in New York
2  City).
3        8. I have represented Freyr in the instant matter since its inception. From day
4  one, the instant matter has been hotly-contested. Defendants currently are on their
5  third counsel. Their first lawyers moved to quash service of the summons and
6  complaint for lack of personal jurisdiction. That motion was denied. They also
7  demurred to the complaint. That motion, too, was denied. Finally (before being
8  replaced), defendants' first lawyers had the case removed from Superior Court to this
9  Court.
10       9. Defendants' second lawyers in this case engaged in significant written
11 discovery with SSB&G. In addition, the parties filed cross-motions for summary
12 judgment. In July 2012, this Court issued an extensive written ruling largely denying
13 the cross-motions but dismissing Freyr's conversion claim. In addition, the Court
14 issued a Scheduling Order which set this matter for trial in February 2013 and ordered
15 the parties to meet and confer to prepare and, by December 21, 2012, file pretrial
16 filings required by Local Rule 16-4 through 16-7.
17       10. In or about November 2012 (before this matter was set to go to trial in
18 February 2013), Freyr and SSB&G discussed an estimate of fees and costs through
19 trial. SSB&G reaffirmed its estimate given to Freyr in June 2011 out of concerns that
20 defendants' new (current) lawyers might take the position that the case was to be tried
21 to a jury. In addition, on December 4, 2012, defendants' new lawyers filed a motion to
22 modify the scheduling order in part to withdraw factual admissions that had been in
23 place for well over a year in the litigation. SSB&G advised Freyr that it would need to
24 incur fees and costs to oppose the motion. Attached hereto as Exhibit 4 is a true and
25 correct copy of SSB&G's Pretrial and Trial Staffing and Fee Estimate for this matter.
26       11. In December 2012, Freyr partners Marshall and Lui requested that SSB&G
27 agree to accept an advance payment towards fees and costs in this matter. Marshall
28 and Lui explained that they wished to reduce their taxable income on the money

received from the off-shore entity in the summer and fall of 2012. SSB&G agreed. At the time, I advised Marshall that Freyr already had incurred roughly $35,000 in fees and costs in preparing: (a) the pretrial documents required by the July 17, 2012, Scheduling Order; and (b) the opposition to defendants' motion to modify the scheduling order. At the time, Freyr also had a receivable with the firm from work done on other matters, including the Newfield matter. Marshall and Lui deposited $80,000 with the firm in late December 2012.

12. On January 4, 2013, the Court issued its order denying defendants' motion to modify the scheduling order. In addition, the Court vacated the trial date and ordered the parties into mediation before the Court's ADR service. From January through June 2013, SSB&G used funds from Freyr's deposit to cover fees and costs incurred in this matter, the Newfield matter, and a potential lawsuit against a third party arising from conduct uncovered during settlement discussions with the Court's ADR mediator in this matter. Each month, SSB&G sent invoices to Freyr evidencing the attorney's fees and costs incurred and application of deposited funds towards those amounts. Never once did Freyr complain about the legal work or fees and costs evidenced by the legal bills.

13. By July 2013, the funds deposited by Marshall and Lui had been exhausted. Freyr received monthly invoices from SSB&G for July, August, and September, but failed to pay those invoices. Shortly before the October trial in this matter, SSB&G requested that Freyr get current, and, without complaint, Freyr did.

14. On November 8, 2013, (following trial), SSB&G emailed a copy of its November 2013 invoice to Freyr for fees and expenses incurred in connection with trial. Attached hereto as Exhibit 5 is a true and correct copy of my November 8, 2013, email to Marshall and Lui. The invoice totaled $51,880.93, reflecting attorney's fees incurred in connection with trial, costs of just over $2,100, and a small past-due amount of just over $2,500. SSB&G offered Freyr a 20% discount on the invoice if Freyr paid it by November 12, 2013.

15. Freyr did not pay the invoice within a week of receipt, and for that matter, to date has not paid the invoice. Freyr did not raise any concerns with any of the fees and costs billed in the invoice within 30 days, as required by the retainer agreement.

16. On December 5, 2013, SSB&G inquired about payment of the November 2013 invoice, explaining that the firm traditionally makes a push to get in year-end receivables as quickly as possible in order to determine holiday bonuses. Attached hereto as Exhibit 6 is a true and correct copy of my December 5, 2013, email to Marshall and Lui. On December 17, 2013, Marshall indicated that Freyr would be making a $20,000 payment by December 19, 2012, and wished to speak with me about the November 2013 invoice on December 19, 2013. Attached hereto as Exhibit 7 is a true and correct copy of Marshall's December 17, 2013, email.

17. I advised Freyr that SSB&G had not received payment as of 9:30am on December 19, 2013. Attached hereto as Exhibit 8 is a true and correct copy of my December 19, 2013, email to Marshall and Lui (9:28 AM). Marshall left me a telephone message indicating that a $20,000 payment would be made later that day. Attached hereto as Exhibit 9 is a true and correct copy of my December 19, 2013, email confirming Marshall's telephone message (11:37 AM).

18. Freyr did not make a partial payment by December 19, 2013, as promised, and did not call me to discuss concerns about the SSB&G invoices. Accordingly, I sent Freyr an email expressing irritation over the string of broken promises (12/20/13 5:21 AM email). Attached hereto as Exhibit 10 is a true and correct copy of the chain of emails I exchanged with Freyr from December 20-22, 2013, regarding payment, beginning on page 7 with my 12/20/13 5:21 AM email. Marshall advised me that Lui, Nord, and he were working on a response. [Ex. 10 at 12/20/13 11:24 AM email (p. 6).] I received the response in the early afternoon of December 20, 2013. [Ex. 10 at 12/20/13 12:25 PM email (pp. 4-5).]

19. On December 19, 2013, I received an email from Marshall in which Freyr falsely accused SSB&G of engaging in billing fraud through: (a) doing unnecessary

work from November 2012 throughout early 2013; and (b) overbilling the week before and during trial of this matter. [Ex. 10 at 12/20/13 12:25 PM email (pp. 4-5).] The accusation of past billing fraud: (a) **ignores entirely** the fact that, in July 2007, this Court issued an order requiring the parties to meet and confer and file with the Court by December 21, 2013, Local Rule 16-4 through 16-7 pretrial documents; (b) **ignores entirely** that, on December 4, 2012, defendants filed a motion to modify the Court's scheduling order, a motion which had to be opposed; (c) **ignores entirely** that, in denying defendant's motion to modify the scheduling order, this Court vacated the February 2013 trial date and ordered the parties into settlement mediation; and (d) **ignores entirely** the investigation done into, among other things, possible claims against a third party in connection with the settlement in February 2013. Moreover, during the same time-period, my office was going through the Local Rule 16-4-16-7 process in matters set for trial in front the Honorable Otis Wright and Andrew Guilford. The notion that the three lawyers working on these separate matters had the need to pad bills (or would if business was slow) is simply without merit. Finally, the accusation of overbilling in connection the trial of this matter was singularly shocking given the fact that much of the time noted in the November 2013 invoice arose from meetings and correspondence I had with Marshall and Lui before, during, and after trial.

20. I emailed copies of the Court's July 2007 Scheduling Order and Order denying defendants' motion to modify the scheduling order to Freyr on December 20, 2013. [Ex. 10 at 12/20/13 4:52 PM email (p. 2).] I then phoned and sent emails to Freyr in an attempt to work through the dispute. I advised Freyr that SSB&G would file a motion to be relieved as counsel on December 23, 2013, if Freyr refused to discuss the dispute promptly. Freyr refused to take my calls and, in breach of its prior promises, indicated that it would make no payment (partial or otherwise) until it had a chance to determine what, if any, payments would be made. [Ex. 10 at 12/22/13 8:49 AM email (p. 1).]

21. On December 23, 2013, I made a last ditch effort to avoid the need to bring this motion. As evidenced in the email thread attached hereto as Exhibit 11, I offered to forbear in filing the motion if: (a) Freyr retracted the false and inflammatory accusation that SSB&G and I had engaged in what is tantamount to billing fraud; and (b) Freyr honored the promise of last week to make a partial payment of $20,000. Freyr failed to respond to my final attempt to avoid (or at least delay) the need for bringing this motion.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct and that this Declaration was executed on December 24, 2013, in Los Angeles, California.

_____
Robert M. Gilchrest